UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6270-CR-GRAHAM

UNITED STATES OF AMERICA,

Plaintiff,

v.

ROBY DUDLEY,

Defendant,
_____:

**NIGHT BOX FILED**

OCT 24 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / M

### MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW

Counsel for Roby Dudley respectfully files the following memorandum in support of his motion to withdraw due to conflict of interest:

**A.   Paul Oppenheimer.**

Paul Oppenheimer was employed at Best Marketing from approximately 1989-91, first as a reloader, then as a manager. Roby Dudley worked at Best as a reloader during this time. Oppenheimer wrote one or more of the pitches used at Best. He was fired by Ed Hexter in 1991. He subsequently sued Mark Goldberg, Ed Hexter and Best Marketing for continuing to use pitches which he claimed were patented or trademarked. He has not been charged in this case.

Paul Oppenheimer was indicted in 1995 on Hobbs Act extortion charges. He allegedly hired someone to threaten Ed Hexter and others in order to collect money owed him. He pled guilty in November, 1995, and agreed to cooperate with the government. He eventually earned a 5K sentence reduction for his cooperation. According to the search warrant affidavit in this case, the investigation of Best began in February, 1996, just three months after Oppenheimer began his cooperation. The search warrant is detailed in its description of the internal workings of Best, and

relies in part on information received from confidential informants.

**B.    Overlap in Representation.**

On January 13, 2000, the Federal Public Defender was appointed to represent Mr. Dudley, who had received a target letter. Mr. Dudley had expressed an interest in cooperating with the government in its investigation, and in fact had begun cooperating, and the government took the appropriate steps to have a lawyer appointed to assist Mr. Dudley in his dealings with the government. Prior to accepting the appointment counsel asked the prosecutor whether there were any existing conflicts of interest, as this was a long term investigation with multiple defendants. AUSA Deb Stuart advised counsel that everyone else in the case had private counsel, and that therefore the Federal Public Defender had no conflict. At that time, this information was accurate.

During the next several months, counsel conducted a preliminary review of selected discovery material and attempted to work out a pre-indictment resolution of the case for Mr. Dudley. No satisfactory resolution was reached.

In September, 2000, the government indicted the case and formally charged Mr. Dudley. Mr. Dudley made his initial appearance on September 27, 2000, and the Federal Public Defender was re-appointed. No additional conflict check was made.

On August 25, 2000, the Federal Public Defender was appointed to represent Paul Oppenheimer on a supervised release violation (the supervised release was part of his sentence on the extortion conviction). This representation continued until December, 2000, when Mr. Oppenheimer's supervised release was terminated.

C.  **Conflict of Interest: Rule 4-1.9(a) – Oppenheimer as a Government Witness.**

Rule 4-1.9(a) of the Rules Regulating the Florida Bar provides that a lawyer who has formerly represented a client in a matter shall not thereafter "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation . . .." This section would preclude counsel's continued representation in this matter if Mr. Oppenheimer were a government witness.

The timing of Mr. Oppenheimer's cooperation with the government and the subsequent investigation of Best, coupled with Oppenheimer's former position at Best and animosity towards Best led counsel to suspect that Oppenheimer had provided cooperation against Best and its employees, and that he was a likely government witness. Counsel has spoken with AUSA Ana Martinez, who has made inquiry of the current and former case agent and other prosecutors involved in this case and in the extortion case. It now appears that Mr. Oppenheimer was **not** an informant in this case, and is not an important government witness. Ms. Martinez has advised counsel and the Court that the government is willing to forego the right to call Mr. Oppenheimer as a witness if the trial proceeds as scheduled. It appears that there is now no conflict of interest under Rule 4-1.9(a). Counsel has consulted with the Florida Bar Ethics Hotline, and the Bar concurs in this conclusion.

D.  **Conflict of Interest: Rule 4-1.9 (b) – Oppenheimer as a defense witness.**

Rule 4-1.9 (b) provides that a lawyer who has formerly represented a client in a matter shall not thereafter "use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known." The Comment to the Rule explains that such information "may not be

3

subsequently used by the lawyer to the disadvantage of the client." It is clear that "a lawyer's confidential knowledge and loyalties can be imputed to his current partners and employees." Reynolds v. Chapman, 253 F.3d 1337, 1343 (11th Cir. 2001). For conflict of interest purposes, a public defender office is treated no differently than any other law firm. Id. (citing Lightbourne v. Dugger, 829 F.2d 1012 (11th Cir. 1987); Mills v. Singletary, 161 F.3d 1273 (11th Cir. 1998)).

The potential for conflict arises because of Mr. Oppenheimer's role in the company. He is a former salesman and was, at one time, Mr. Dudley's manager. He wrote one or more of the scripts used by Dudley and others, and has claimed intellectual property rights over them. He has used the legal system to try to enforce his rights as to these pitches. From Mr. Oppenheimer's viewpoint, the pitches have the appearance of being valuable, and more importantly legal, sales tools. The government now contends that these pitches are false and fraudulent – that is the core of its case against Mr. Dudley. Yet Mr. Oppenheimer has never been charged in this case.

Counsel does not know what Mr. Oppenheimer would say about the pitches. Counsel has been advised by another potential witness that Best was essentially a clean company, and that any legal or criminal problems are probably traceable to Mr. Oppenheimer. It was counsel's intention to interview Mr. Oppenheimer and find out what he has to say. Counsel does not know what Mr. Oppenheimer would say. Counsel does not know whether Mr. Oppenheimer's testimony would help, hurt or be neutral. Counsel does not know whether Mr. Oppenheimer would be a suitable defense witness. Counsel does not know whether Mr. Oppenheimer would be otherwise useful in this investigation. Counsel does not know whether pursuing this avenue could harm Mr. Oppenheimer or compromise counsel's duty of loyalty to him. In the process of locating and doing a background check on Mr. Oppenheimer, the conflict was discovered. Counsel immediately

notified the Court.

The Florida Bar Ethics Hotline advised counsel that this scenario definitely presents a **potential** conflict. Counsel was **required** by the Rules of Ethics to raise this issue with the Court. Whether there is an **actual** conflict hinges on what confidential information is known to the Federal Defender (which is imputed to counsel). It also hinges on what Paul Oppenheimer would say if questioned. Counsel is not in a position to answer these questions or to seek to learn the answer unless directed to do so by the Court.

The Ethics Hotline further advised counsel that once the issue is raised, it is for the Court to determine whether there is a conflict and whether to appoint new counsel. Rule 4-1.16 states that "[w]hen ordered to do so by a tribunal a lawyer shall continue representation notwithstanding good cause for terminating the representation." See Opinion 93-8 (May 15, 1994) (copy attached).

E.  **Waiver.**

The Comment to Rule 4-1.9 notes that disqualification from subsequent representation is for the protection of the clients and may be waived by them. A waiver is effective "only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client." According to the Ethics Hotline, counsel is not in a position to advise the clients as to a waiver because of the conflict. If the Court or another lawyer were to fully advise the clients as to the conflict and if the clients agreed to waive the conflict, the conflict could be waived.

F.  **Notice**.

Counsel does not know when he first became aware of the name Paul Oppenheimer. At the Court's request, counsel has reviewed notes of meetings with Mr. Dudley. On May 21, 2001, Mr. Oppenheimer was discussed along with numerous other employees of Best who had never been

charged. At that time, counsel did not view Mr. Oppenheimer as a significant witness. The government never advised counsel that Mr. Oppenheimer was going to be a witness, and accordingly never provided reports of interviews or other information concerning Mr. Oppenheimer. Counsel's conclusion that Mr. Oppenheimer was a government informant in this case apparently was erroneous.

The potential evidence in this case includes more than 96 cartons of discovery material, more than fifty potential victim/customer witnesses, numerous tapes and transcripts, bank records and tax information. Potential witnesses include codefendants who have agreed to cooperate, and numerous other employees of Best who were not indicted.

Subsequent to appointment of new counsel for Hannibal Penney, undersigned counsel and counsel for Mr. Penney (Bill Norris) have met on several occasions and have worked together on trial preparation. During this time, the focus of the defense preparation has shifted somewhat. The defense targeted several individuals who were neither customers nor defendants for interviews. On October 5, 2001, counsel spoke with a potential witness who pointed to Mr. Oppenheimer as a significant figure who should be contacted. Mr. Norris' investigation also independently pointed to Mr. Oppenheimer as a significant figure. Undersigned counsel agreed to contact Mr. Oppenheimer.

In the process of locating and doing a background check on Mr. Oppenheimer, counsel learned on October 10, 2001, that the Federal Public Defender had previously represented Mr. Oppenheimer on a supervised release violation between August and December of 2000. That same day, counsel contacted the government to find out whether the government intended to use Mr. Oppenheimer as a witness. Counsel also met with Mr. Norris to discuss the issue. The following day, counsel spoke with members of the FPD appellate division to discuss the conflict issue. The advice was that there was a potential conflict and that the Court must be notified. Counsel also met

with Kathy Williams, who offered the same advice. Counsel prepared a notice of conflict and request for hearing, which was filed the next morning.

### G. Conclusion.

It now appears that Oppenheimer is neither an informant in this case nor a key government witness. That takes care of part of the conflict. The conflict now exists only in the possibility that Oppenheimer would be a defense witness. At this point, counsel is foreclosed from pursuing this avenue. While the potential conflict is somewhat attenuated, there is still a potential conflict of interest. The conflict would be eliminated by appointment of new counsel, which would necessitate continuing the trial. If the Court feels that the interest of going forward as scheduled outweighs the potential conflict of interest, the Court should deny the Motion to Withdraw. Counsel is continuing with trial preparation, and will be ready to proceed to trial as scheduled.

KATHLEEN WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____
   for Patrick M. Hunt
   Assistant Federal Public Defender
   Attorney for Defendant
   Florida Bar No. 571962
   One East Broward Blvd., Suite 1100
   Ft. Lauderdale, Florida 33301
   (954) 356-7436
   FAX 954/356-7556

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Ana Martinez, Assistant United States Attorney at 99 N.E. 4th Street, Miami, FL 33132, and William Norris, Esq. at 7685 SW 104th Street, Suite 220, Miami, FL 33156 this <u>24th</u> day of October, 2001.

_____
for Patrick M. Hunt





**OPINION 93-8**
**(May 15, 1994)**

**HEADNOTE:** An attorney representing two clients in a litigated matter must move to withdraw if the interests of the two clients become adverse. If the court denies the attorney's motion to withdraw, Rule 4-1.16(c) requires the attorney to continue the representation despite the conflict.

**RPC:** 4-1.7, 4-1.16

**Case:** Ohntrup v. Firearms Center, Inc., 802 F.2d 676 (3d Cir. 1986)

A member of The Florida Bar has requested an advisory ethics opinion. The operative facts as presented by the inquiring attorney are as follows. The inquiring attorney is staff counsel for an insurance company and was asked to prepare a coverage opinion. Upon receipt of the file, however, the attorney filed a Notice of Appearance on behalf of both the employer and carrier. The inquiring attorney called the Ethics Hotline and was advised that this was a conflict of interest under Rule 4-1.7, and that, therefore, the attorney should withdraw. The attorney filed a Motion to Withdraw, which was denied by the court based on the employer's objections. The carrier has requested that the attorney prepare a coverage opinion letter in the matter.

Rule 4-1.7 of the Rules Regulating The Florida Bar is the governing ethical standard. This rule provides in pertinent part:

**(a) Representing Adverse Interests.** A lawyer shall not represent a client if the representation of that client will be directly adverse to the interest of another client, unless:
(1) The lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and
(2) Each client consents after consultation.

As this rule is applied to the inquiring attorney's situation, it appears that he is representing two clients with adverse interests. Therefore, the attorney should withdraw from both representations. See Rule 4-1.16. If withdrawal is denied as the attorney has indicated it has been, subparagraph (c) of Rule 4-1.16 states:

When ordered to do so by a tribunal a lawyer shall continue representation notwithstanding good cause for terminating the representation.

The inquiring attorney must be certain the court fully understands that his continued representation of both the carrier and the employer is a conflict of interest. If the court nevertheless refuses to permit the inquiring attorney to withdraw, the attorney should then, if possible, encourage the clients to obtain new counsel and to seek substitutions of counsel. If only one party obtains new counsel, then Rule 4-1.16(c) will require the attorney to continue his representation of the other party despite the conflict of interest. See Ohntrup v. Firearms Center, Inc., 802

**Full-Site Search**
Enter search word(s)



F.2d 676 (3d Cir. 1986).

http://www.flabar.org/newflabar/memberservices/ethics/93-8.html               10/22/01